IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EMORY UNIVERSITY and
MICROBE GUARD, INC.,

    Plaintiffs,

      v.

NOVA BIOGENETICS, INC. and
TIMOTHY C. MOSES,

    Defendants.

CIVIL ACTION FILE
NO. 1:06-CV-0141-TWT

## OPINION & ORDER

This is a patent infringement case.  It is before the Court on the Defendants'
Joint Motion to Dismiss and Motion to Disqualify Needle & Rosenberg as Counsel
for Plaintiffs [13], Defendant Timothy C. Moses' Motion to Dismiss and Motion to
Strike [14], and the Plaintiffs' Motion to Amend the First Amended Complaint [25].
For the reasons set forth below, the Defendants' Joint Motion to Dismiss and Motion
to Disqualify is DENIED, Defendant Moses' Motion to Dismiss and Motion to Strike
is DENIED, and the Plaintiffs' Motion to Amend is GRANTED.

## I. BACKGROUND

In 1995, BioShield Technologies, Inc. ("BioShield"), a company run by Jacques
Elfersy and Defendant Timothy C. Moses, contacted Emory University with the idea

T:\ORDERS\06\Emory\mtdtwt.wpd

of producing a stable version of a certain antimicrobial product ("DC 5700") manufactured by Dow Corning.  DC 5700 has the ability to bond with the surface to which it is applied, thus causing that surface to have permanent antimicrobial properties.  The problem with the product, however, was that it is not stable in water for any period of time and was rendered ineffective as an antimicrobial when exposed to water.

In an effort to solve this problem, BioShield negotiated a research agreement with two Emory University scientists, Dr. Lanny Liebeskind and his graduate student, Gary Allred.   Under this agreement, all subject matter invented by the Emory scientists would be assigned to Emory University.  (Defs.' Mot. to Dis., Ex. 1, ¶ 1.3.) The agreement also provided that any disputes regarding inventorship would be submitted to arbitration and that Emory had the right to select counsel to prosecute any patent applications.  (Id., ¶ 8.6.)

Liebeskind and Allred subsequently solved the stability problem by creating a chemical "cap" that prevented the product from reacting with water.  Pursuant to the research agreement, Emory University engaged the law firm of Needle & Rosenberg ("N&R") to prosecute the patent applications on this invention.  On May 7, 1996, N&R filed a patent application directed to the chemical compounds and compositions and to general methods of use of the claimed compound ("the '156 Application").

The application, which eventually became U.S. Patent No. 5,959,014 ("the '014 patent"), named only Liebeskind and Allred as inventors. Before the '156 application was filed, however, BioShield claimed that Moses and Elfersy should be listed as co-inventors because they had supplied prior art to Emory and stated the problem that was to be solved.

The parties subsequently submitted this dispute to arbitration. In that proceeding, N&R represented Emory and the law firm of Jones & Askew represented BioShield. The Arbitrator determined that Moses and Elfersy had made no contribution to the claimed invention. (Pls.' Resp. to Defs.' Mot. to Dis., Ex. 7, at 10.) The Arbitrator thus found that Liebeskind and Allred were the only inventors and that Moses and Elfersy should not be named as co-inventors on the '156 application. (Id.)

On May 27, 1999, N&R then filed another application ("the 771 application"), which lead to U.S. Patent No. 6,221,944 ("the '944 patent"). The claims of the '771 application were directed to the same compounds and compositions that the Arbitrator had already determined were the sole invention of Liebeskind and Allred. Accordingly, the Emory scientists were also the only named inventors on this application.

On January 20, 2006, Emory and Microbe Guard, the exclusive licensee to the technology covered by these patents, filed this lawsuit. In it they claim that Defendant

Nova BioGenetics ("Nova") infringed and is continuing to infringe on the patents. The complaint further alleges that Defendant Moses, Nova's former Executive Vice President and Director of Business Development, personally took part or actively directed others to do these acts of infringement.  The Defendants have filed several motions, including two motions to dismiss, a motion to strike, and a motion to disqualify the Plaintiffs' counsel.  The Plaintiffs then filed a motion to amend their complaint.

## II. DISCUSSION

### A. Motion to Amend

Under Federal Rule of Civil Procedure 15, a plaintiff's motion for leave to amend its pleading shall be "freely given when justice so requires." Leave should thus be granted in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment ...." McKinley v. Kaplan, 177 F.3d 1253, 1258 (11th Cir. 1999).  The Plaintiffs have filed a motion to amend their complaint to allege additional "piercing the veil" facts in order to clarify their pleadings and further support Defendant Moses' liability under 35 U.S.C. § 271.  The Defendants do not allege and

the Court does not find that any of the above-stated factors are present in this motion. The Plaintiffs' motion should be granted.

    B. <u>Motion to Dismiss</u>

        1. <u>Standard</u>

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed. R. Civ. P. 12(b)(6); <u>see</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Linder v. Portocarrero</u>, 963 F.2d 332 (11th Cir. 1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. <u>See</u> <u>Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.</u>, 711 F.2d 989, 994-95 (11th Cir. 1983). Generally, notice pleading is all that is required for a valid complaint. <u>See</u> <u>Lombard's, Inc. v. Prince Mfg., Inc.</u>, 753 F.2d 974, 975 (11th Cir. 1985), <u>cert. denied</u>, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. <u>Id.</u>

        2. <u>Defendants' Joint Motion</u>

The Defendants have moved for dismissal of all claims, arguing that inequitable conduct by Plaintiff Emory and its attorneys render the patents unenforceable. The Defendants have included eleven exhibits allegedly demonstrating inequitable

conduct.  Generally, a court may not consider matters outside the pleadings on a motion to dismiss.  See Carter v. Stanton, 405 U.S. 669, 671 (1972).  Although the Court has the discretion to convert this motion into one for summary judgment, it declines to do so at this early stage of the litigation before there has been any discovery.  Based on the pleadings, the Plaintiffs have clearly stated claims upon which relief can be granted.  The Defendants' motion is without merit and is denied.

### 3. Timothy Moses' Motion

Defendant Moses contends that the First Amended Complaint does not state a basis for holding him personally liable for the alleged infringement by his company. Under 35 U.S.C. § 271(b), anyone who "actively induces infringement of a patent shall be liable as an infringer."  To succeed in an inducement claim under this statute, "the patentee must show both direct infringement and a certain level of intent on the part of the alleged inducer that the patent be infringed."  Insituform Techs. Inc. v. CAT Contracting, Inc., 385 F.3d 1360, 1377 (Fed. Cir. 2004).  The Federal Circuit has acknowledged, however, that there "is a lack of clarity concerning whether the required intent must be merely to induce the specific acts or additionally to cause an infringement."  Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1365 (2006); MercExchange, L.L.C. v. eBay, Inc., 401 F.3d 1323, 1332 (Fed. Cir. 2005); Insituform Techs., 385 F.3d 1360, 1378.  In either case, however, the Plaintiffs have

stated a claim.  The First Amended Complaint states that Defendant Moses "personally directed or knowingly and actively caused others to do the acts that infringe the Plaintiffs' rights" and "willfully and deliberately" infringed the patent. (First. Am. Compl., ¶¶ 23, 24, 30, 31, 37, 38.)  This is sufficient to allege specific intent.  See Zenith Electronics Corp. v. Exzec, Inc., 32 U.S.P.Q.2d 1959, 1960 (N.D. Ill. 1994) (holding that an allegation of willful and wanton infringement was sufficient to establish the personal liability of a corporate official and avoid dismissal).  To preclude any further debate on this issue, the Plaintiffs alleged in their Second Amended Complaint that Moses "intentionally personally directed or knowingly and actively caused others to do the acts that infringe the Plaintiffs' rights."  (Sec. Am. Compl., ¶¶ 22, 32.)  This is clearly a sufficient pleading of specific intent.

Moreover, through their Second Amended Complaint, the Plaintiffs have alleged that Defendant Nova was the alter ego of Moses.  If an alter ego relationship is demonstrated, a court is justified in piercing the corporate veil and holding a corporate officer liable for direct infringement under 35 U.S.C. § 271(a).  Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 552 (Fed. Cir. 1990).  In Georgia, the alter ego doctrine requires a showing that: (1) the individual disregarded the corporate entity and made it a mere instrumentality for the transaction of his own affairs; (2) there is such unity of interest and ownership that the separate personalities

of the corporation and the individual no longer exist; and (3) failure to disregard the corporation would result in fraud or injustice. <u>Dearth v. Collins, Inc.</u>, 441 F.3d 931, 934 (11th Cir. 2006) (<u>quoting</u> <u>McLean v. Cont'l Wingate Co.</u>, 212 Ga. App. 356, 359 (1994)).   Here, the Plaintiffs' pleading clearly meets these requirements.   They specifically allege that Moses: (1) disregarded the corporate form for his personal interests (Sec. Am. Compl., ¶ 24); (2) "exercised complete domination of the policy and business practice of Defendant Nova BioGenetics" in order to "personally direct" Nova's acts of infringement (<u>id.</u>, ¶ 23); and (3) "overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud, or evade tort liability." (<u>Id.</u>, ¶ 25.)  Defendant Moses' Motion to Dismiss should be denied.

   C. <u>Motion to Strike</u>

   Moses also moves to strike Paragraph 5 of the First Amended Complaint, which states that he was "Executive Vice President and Director of Business Development of Nova until his conviction for securities fraud and perjury."  Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, "[i]t is axiomatic that motions to strike are not favored and are, therefore, infrequently granted." <u>U.S. v. Southern Motor Carriers Rate Conference</u>, 439 F. Supp. 29, 39 (N.D. Ga. 1977).  "Matter will not be stricken from a pleading unless it is clear

that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." Daugherty v. Firestone Tire and Rubber Co., 85 F.R.D. 693, 695 (N.D. Ga. 1980) (quoting 2A Moore's Federal Practice, P 12.21(2) (1979)).

The Court finds that Defendant Moses' conviction for securities fraud clearly has some relevance in this proceeding.  The Plaintiffs have alleged that Moses is personally liable because he directed and controlled Nova's infringement.  In their response to this motion, the Plaintiffs say that they can show that in Moses' securities fraud case, the government and the jury found that Moses "personally directed others to publish fraudulent press releases for the purpose of manipulating the value of stock."  (Pls.' Resp. to Mot. to Strike, at 9-10.)  Moreover, fraud and perjury convictions are relevant to a witness's credibility.  See Fed. R. Evid. 609(a)(2).  Thus, although the potential prejudice of this evidence may preclude its admission at trial, see Fed. R. Evid. 403, this determination should not be made in ruling on a motion to strike.  For these reasons, the Court denies the Defendant's motion.

D. Motion to Disqualify

The Defendants have also moved to disqualify N&R as counsel for the Plaintiffs in this action.  Specifically, the Defendants contend that disqualification is appropriate because some of the members of the law firm may be called as witnesses,

and they claim that the firm represented Defendant Moses before the Patent Trade Office.  Under Georgia Rule of Professional Conduct 3.7, a lawyer may not "act as an advocate at a trial in which the lawyer is likely to be a necessary witness."  The Plaintiffs concede that Mitchell Katz, the patent attorney with N&R who supervised the prosecution of the at-issue patents, should be disqualified.[1]  However, Rule 3.7 further states that: "A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9."  Ga. Rule of Prof. Cond. 3.7(b).  Local Patent Rule 5.3 similarly provides a presumption that N&R should not be disqualified simply because some of its attorneys prosecuted the patent.

The Defendants allege that a conflict of interest under Georgia Rules of Professional Conduct 1.7 and 1.9 exists here because N&R previously represented Defendant Moses.  Attorney Katz has specifically testified, however, that Moses was not a client of N&R.  (Pls.' Resp. to Mot. to Disq., Ex. 4, ¶ 5.)  Indeed, it is undisputed that Moses and BioShield were represented by Jones & Askew during the prosecution of the at-issue patents.  (Id., Exs. 6; 10.)  Furthermore, the Federal Circuit has consistently held that a firm prosecuting a patent application on behalf of a company

---

[1]Two other attorneys from N&R, Yahn Bernier and Lawrence Villanueva, also made significant contributions to the prosecution of the patent.  They are no longer members of the firm, however.  (Pls.' Resp. to Mot. to Disq., at 3 n.2.)

does not form an attorney-client relationship with any individual inventor required to assign his rights to the company.   See, e.g., University of West Virginia v. Vanvoorhies, 278 F.3d 1288, 1304 (Fed. Cir. 2002) (affirming denial of motion to disqualify because firm represented assignee not individual inventor in patent prosecution); Sun Studs, Inc. v. Applied Theory Assocs., Inc., 772 F.2d 1557, 1568 (Fed. Cir. 1985) (same).  The Court thus finds no cause to disqualify N&R from this proceeding.

## III. CONCLUSION

For the reasons set forth above, the Defendants' Joint Motion to Dismiss and Motion to Disqualify Needle and Rosenberg as Counsel for Plaintiffs [13] is DENIED; Defendant Timothy C. Moses' Motion to Dismiss and Motion to Strike [14] is DENIED; and the Plaintiffs' Motion to Amend the First Amended Complaint [25] is GRANTED.

SO ORDERED, this 19 day of September, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge