IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EMORY UNIVERSITY and
MICROBE GUARD, INC.,

   Plaintiffs,

     v.

NOVA BIOGENETICS, INC. and
TIMOTHY C. MOSES,

   Defendants.

CIVIL ACTION FILE
NO. 1:06-CV-0141-TWT

## OPINION & ORDER

This is a patent infringement case. It is before the Court on the Plaintiffs' Motions for Summary Judgment [Doc. 54, 55]. For the reasons set forth below, the motions are GRANTED.

## I. Background

The Defendant Nova BioGenetics, Inc. ("Nova") is in the business of manufacturing and distributing antimicrobial agents. Defendant Timothy Moses was the Executive Vice President and Director of Business Development for Nova. The Defendant Nova was administratively dissolved on May 16, 2008. See Georgia Secretary of State, Corporate Search, http://corp.sos.state.ga.us/corp/soskb/Filings.asp?154539# (last visited July 11, 2008).

A company called BioShield Technologies, Inc. ("BioShield") was Defendant Nova's predecessor in interest. BioShield, run by Jacques Elfersy and Defendant Moses, contacted Emory University with the idea of producing a stable version of a certain antimicrobial product ("DC 5700") manufactured by Dow Corning. DC 5700 has the ability to bond with the surface to which it is applied, thus causing that surface to have permanent antimicrobial properties. The problem with the product, however, was that it is not stable in water for any period of time and was rendered ineffective as an antimicrobial when exposed to water.

In an effort to solve this problem, BioShield negotiated a research agreement with two Emory University scientists, Dr. Lanny Liebeskind and his graduate student, Gary Allred. Under this agreement, all subject matter invented by the Emory scientists would be assigned to Emory University. The agreement also provided that any disputes regarding inventorship would be submitted to arbitration.

Liebeskind and Allred subsequently solved the stability problem by creating a chemical "cap" that prevented the product from reacting with water. Pursuant to the research agreement, Emory University engaged the law firm of Needle & Rosenberg to prosecute the patent applications on this invention. In 1996, Needle & Rosenberg filed a patent application directed to the chemical compounds and compositions and to general methods of use of the claimed compound ("the '156 Application"). The

application, which eventually became U.S. Patent No. 5,959,014 ("the '014 patent"), named only Liebeskind and Allred as inventors. Before the '156 application was filed, however, BioShield claimed that Moses and Elfersy should be listed as co-inventors because they had supplied prior art to Emory and stated the problem that was to be solved.

The parties subsequently submitted this dispute to arbitration. The Arbitrator determined that Moses and Elfersy had made no contribution to the claimed invention. (Pls.' Mot. for Summ. J., Ex. G, at 10). The Arbitrator thus found that Liebeskind and Allred were the only inventors and that Moses and Elfersy should not be named as co-inventors on the '156 application. (Id.) Later, in May 1999, Needle & Rosenberg filed another application ("the '771 application"), which lead to U.S. Patent No. 6,221,944 ("the '944 patent"). The claims of the '771 application were directed to the same compounds and compositions that the Arbitrator had already determined were the sole invention of Liebeskind and Allred. Accordingly, the Emory scientists were also the only named inventors on this application.

On January 20, 2006, Emory and Microbe Guard, the exclusive licensee to the technology covered by these patents, filed this lawsuit. In it they claim that Defendant Nova infringed and is continuing to infringe on the patents. The complaint further alleges that Defendant Moses personally took part or actively directed others to do

these acts of infringement. On January 2, 2008, Defendant Moses entered into a consent order agreeing to a preliminary and permanent injunction against making, using, or selling products infringing the '014 or '944 patents. [Doc. 57]. He is no longer a party in this suit. The Plaintiffs have two motions for summary judgment pending against the Defendant Nova. First, the Plaintiffs seek summary judgment on Defendant Nova's counterclaim that the patents are invalid and unenforceable. In addition, the Plaintiffs seek summary judgment on their claim that the Defendant Nova is infringing upon the '014 and '944 patents. No response to the motions has been filed.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant. Adickes v. S.H. Kress and Co., 398 U.S. 144, 158-159 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the non-movant, who must go

beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III. Discussion

A. Validity and Enforceability

In its pleadings, the Defendant asserts - both as an affirmative defense and a counterclaim - that the '944 and '014 patents were invalid. A patent should be presumed valid, and it is the burden of the party asserting invalidity to show that a patent is invalid. 35 U.S.C. § 282. This burden must be overcome by clear and convincing evidence. Oakley, Inc. v. Sunglass Hut Intern., 316 F.3d 1331, 1339 (Fed. Cir. 2003). Determining whether a patent is valid over any prior art involves two steps: 1) discerning the scope and meaning of the claims asserted (claim construction); and 2) comparing the asserted claims with the prior art. Id. As for the claim construction, the Defendant has failed to identify a list of claim terms, phrases or clauses to be construed by the Court. All claims at issue will be given their ordinary and customary meaning. Phillips v. AWH Corp., 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) (en banc).

To date, the Defendant has failed to identify any prior art. In fact, the Defendant has failed to serve any invalidity contentions at all. Patent Local Rule 4.3 states that "[e]ach party opposing a claim of patent infringement . . . shall serve on all

parties its Disclosure of Invalidity Contentions at the time specified in these rules. . . ." Id. Patent Local Rule 4.4(b) states that a "defendant opposing a claim of patent infringement shall make its Disclosure of Invalidity Contentions and its Response to Infringement within thirty (30) days after the plaintiff's Disclosure of Infringement Contentions." The Plaintiffs submitted their Disclosure of Infringement Contentions on December 20, 2006.

Local patent rules are governed by Federal Circuit law. O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc., 467 F.3d 1355, 1364 (Fed. Cir. 2006). "Decisions enforcing local rules in patent cases will be affirmed unless clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by the evidence." Id. at 1366-67. To be valid, a patent local rule must conform with the letter and spirit of federal statutes and the Federal Rules of Civil Procedure. Id. at 1364. It does not appear that the relevant patent local rules run afoul of superior federal authority; in fact, supplementing or amending disclosures are to be done pursuant to the corresponding Federal Rules. Patent L.R. 4.5(b). More importantly, considering the Defendant has not responded to the Infringement Contentions in nineteen months - nor even responded to these Motions for Summary Judgment - the patent local rules cannot be said to offend federal statutes or the Federal Rules in this case. The Federal Circuit has affirmed a district court's denial

of a motion to amend infringement contentions which were untimely under its local rules. O2 Micro, 467 F.3d at 1365-67. In O2 Micro, the district court applied patent local rules which permitted amendments for infringement contentions for good cause only, even though the typical period allowed for discovery had not expired. Id. at 1360. The Federal Circuit affirmed, noting that "nothing in the Federal Rules is inconsistent with local rules requiring the early disclosure of infringement and invalidity contentions and requiring amendments to contentions to be filed with diligence." Id. at 1366. Likewise, the Court finds that the Defendant's complete disregard for the Patent Local Rules, at this late stage, will preclude it from introducing any evidence to challenge the patent's validity. Therefore, there is no question of material fact as to the validity of the patents, and the Plaintiffs are entitled to summary judgment as to the patents' validity.

In its pleadings, the Defendant also argues that the patents are unenforceable. Those seeking to prosecute a patent application have a duty of candor, good faith, and honesty to the Patent and Trademark Office. Warner-Lambert Co. v. Teva Pharm. USA, Inc., 418 F.3d 1326, 1342 (Fed. Cir. 2005). A breach of this duty constitutes inequitable conduct, which could lead to a patent being found unenforceable. To show inequitable conduct, a party must show both materiality and intent by clear and convincing evidence. Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir.

1995). In this case, the Defendant alleges that the Plaintiffs knowingly withheld information to the Patent and Trademark Office ("PTO"), presumably by failing to disclose that Defendant Moses or Elfersy were alleged inventors. (See Answer, at 2). In contrast, the Defendant also makes the implausible suggestion in its earlier Motion to Dismiss that the Plaintiffs committed inequitable conduct (against the Defendants) by failing to timely notify the PTO of the Arbitrator's decision that the Emory scientists (Liebeskind and Allred) were the sole inventors of the '014 and '944 patents. (Def.'s Mot. to Dismiss, at 6-11). On either allegation, the Defendant has not met its burden of showing inequitable conduct. The Arbitrator found that "Elfersy and Moses did not make any contribution to the invention of the ['014] claim" and that Liebeskind and Allred "are the only co-inventors in respect to any and all of the claims of the U.S. Patent Application filed May 7, 1996." (Pls.' Mot. for Summ. J., Ex. G, at 10). Additionally, it is hard to conceive how the failure to immediately disclose the Arbitration Award - which granted inventorship to the Emory scientists only - constituted inequitable conduct towards the Defendant. For these reasons, the Defendant has failed to show that the patents are invalid or unenforceable.

B. Infringement

A determination of patent infringement requires a two-part analysis. Oakley, Inc. v. Sunglass Hut Intern., 316 F.3d at 1339. The first step is claim construction.

Next, the construed claims are compared to the allegedly infringing device. Id. In this case, the Plaintiffs have alleged Defendant's "AM 500 antimicrobial product" infringes on its '014 and '944 patents. The Plaintiffs have submitted evidence, in the form of their Preliminary Infringement Claims interpreting their patents, that AM 500 contains all elements of (among other things) the claim 1 of the '014 patent and claim 1 of the '944 patent. (See Statement of Undisputed Material Facts in Supp. of Pls.' Mot. for Summ. J., ¶¶ 9-10).

The Plaintiffs argue that the Defendant should be barred from asserting any arguments relating to non-infringement. As stated, the Plaintiffs submitted their Disclosure of Infringement Contentions on December 20, 2006. Under this District's patent local rules, a defendant must make its Response to Infringement within thirty days after the plaintiff's Disclosure of Infringement Contentions. Patent L.R. 4.4(b). The Defendant has failed to submit its Response, and should be barred from filing any Response at this late date. O2 Micro, 467 F.3d at 1365-67.

The Plaintiffs seek a permanent injunction against the Defendant preventing future infringement on the '014 or '944 patents. Under the Patent Act, a district court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent." 35 U.S.C. § 283. For a court to grant a permanent injunction, the plaintiff must satisfy a four-factor test. The plaintiff must

show 1) that it has suffered an irreparable injury; 2) that legal remedies are inadequate; 3) that an equitable remedy is warranted after balancing the hardships between the plaintiff and defendant; and 4) that a permanent injunction would not be adverse to the public interest. See, e.g., eBay Inc. v. MercExchanage, LLC, 547 U.S. 388, 391 (2006) (reversing Federal Circuit's general rule that permanent injunction necessarily follows finding of infringement). A district court's decision in this regard is reviewed under an abuse of discretion standard. Id. The Plaintiffs have demonstrated that a permanent injunction is appropriate against the Defendant.

The Plaintiffs have shown irreparable harm. The Plaintiffs and the Defendant are direct competitors in the antimicrobial products marketplace. "[W]here a company pioneers an invention in the marketplace, irreparable harm flows from a competitor's attempts to usurp the pioneering company's market position and goodwill." 800 Adept, Inc. v. Murex Securities, Ltd., 505 F. Supp. 2d 1327, 1337 (M.D. Fla. 2007) (citations omitted). Concerns of harms to goodwill are strong here where the infringing company has such a questionable reputation - not only has it been administratively dissolved, but Defendant Moses is currently incarcerated.

Further, there are no adequate remedies available at law for the Plaintiffs. "The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable

in money." 800 Adept, 505 F. Supp. 2d at 1337 (quoting Reebok International Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1557) (Fed. Cir. 1994)). Especially when an infringing company is not actively selling the offending product, the harm to a patent-holder may seem esoteric. But the negative effects of the Plaintiffs' potential loss in goodwill, market share, and prestige are real, and would be difficult to quantify solely through monetary damages.

The balance of hardships favors a permanent injunction. At this moment, the Defendant is administratively dissolved. A permanent injunction would not have any discernible present effect upon the dissolved business. On the other hand, denying the injunction could expose the Plaintiffs to the danger that the Defendant might infringe upon the patent again. An injunction gives the Plaintiffs certainty that the Defendant will no longer infringe upon its patents. It is true that given the Defendant's current business status, it is unlikely to be selling AM 500. However, absent strong evidence that the Defendant will not infringe again, this is not a proper ground to deny a permanent injunction. 800 Adept, 505 F. Supp. 2d at 1338 (citing W.L. Gore & Assoc., Inc. v. Garlock, Inc., 842 F.2d 1275, 1281-82 (Fed. Cir. 1988)).

Finally, the public interest tips in favor of granting a permanent injunction. First, the public is not losing a major supplier of antimicrobial products; the Defendant is currently dissolved. And there are alternatives in the marketplace, including the

Plaintiff Microguard. Although it is difficult to conceive how an injunction disserves the public, the advantages to the public are obvious. For a myriad of reasons, the public benefits from the enforcement of our patent system. 800 Adept, 505 F. Supp. 2d at 1338. The permanent injunction preventing the Defendant Nova from infringing upon the '014 and '944 patents should be granted. The Plaintiffs do not seek damages at this time. (Pls.' Mot. for Summ. J., at 2 n.1). Therefore, after entry of judgment, the Clerk is directed to close this file.

## IV. Conclusion

For the reasons set forth above, the Plaintiffs' Motions for Summary Judgment [Doc. 54, 55] are GRANTED.

SO ORDERED, this 24 day of July, 2008.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge